**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

v.

CHEN CHIANG LIU,
    *Defendant-Appellant.*

No. 09-10136

D.C. No.
2:07-CR-00170-
JCM-LRL-1

OPINION

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted
August 31, 2010—San Francisco, California

Filed January 21, 2011

Before: Betty B. Fletcher, Richard C. Tallman, and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Tallman

1297

## COUNSEL

Dan C. Maloney (argued), Assistant Federal Public Defender, Michael K. Powell, Assistant Federal Public Defender,

Franny Forsman, Federal Public Defender, Office of the Federal Public Defender, Reno, Nevada, for defendant-appellant Chen Chiang Liu.

Elizabeth A. Olson (argued), Assistant United States Attorney, Robert L. Ellman, Appellate Chief, Daniel G. Bogden, United States Attorney, United States Attorney's Office, Reno, Nevada, for plaintiff-appellee United States of America.

---

**OPINION**

TALLMAN, Circuit Judge.

Defendant-Appellant Chen Chiang Liu appeals his Nevada district court convictions for conspiracy to import, transfer, and sell high quality counterfeit United States currency. Liu contends that his trial was not timely held, in violation of the Speedy Trial Act ("STA"), 18 U.S.C. § 3161, *et seq.* He further argues that the district court plainly erred when it failed to give a multiple conspiracy jury instruction and a specific unanimity jury instruction. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

**I**

The evidence at trial showed that Liu was involved in a sophisticated international enterprise to import high quality counterfeit currency into the United States in $100 denominations called "supernotes." The quality of the supernotes was so good that the counterfeit bills could pass undetected through slot machines and cash-counting machines in Las Vegas casinos. The conspirators obtained the supernotes through contacts in either Russia or North Korea, and usually the purchaser would travel to Hong Kong to receive the counterfeit currency. The conspirators charged either thirty-five or forty cents on the dollar for the supernotes.

Federal agents first encountered this enterprise through an undercover agent's contacts with a member of the conspiracy. The undercover agent met with both Liu and his coconspirators numerous times from April 2004 through August 2005. During this time, the undercover agent received two separate shipments of supernotes. After the undercover agent received the first shipment in May 2005, he gave Liu $20,000 in purported supernotes as recompense for Liu's participation in the transaction.[1] Liu was arrested for this activity on August 20, 2005, shortly before the undercover agent received the second shipment of supernotes.

On August 17, 2005, a grand jury in the Central District of California returned an indictment (the "California indictment") charging Liu and three co-defendants with one count of conspiring to (1) "make, deal, and possess counterfeit United States currency outside of the United States," in violation of 18 U.S.C. § 470, and (2) "buy, sell, exchange, transfer, receive, and deliver counterfeited obligations and securities of the United States," in violation of 18 U.S.C. § 473. Liu appeared in federal district court in Los Angeles to respond to the California indictment on August 22, 2005, and was arraigned on August 30, 2005. The district court released Liu pending trial; the trial date was continued numerous times at the joint request of Liu and the prosecution.[2] On April 3, 2008, the prosecution moved to dismiss the California indictment because a superseding indictment was going to be filed

_____

[1]The undercover agent actually provided Liu with $20,000 worth of genuine currency because the agent could not distribute counterfeit bills. Liu was unable to determine that he had been paid with genuine, rather than counterfeit, currency, presumably because of the quality of the supernotes.

[2]The Speedy Trial Act provides that trial shall commence no later than seventy days from indictment or first appearance in court, whichever is later, unless time is excluded from the calculation for various reasons such as filing and deciding pretrial motions. 18 U.S.C. § 3161(c)(1) (timeline); *id.* § 3161(h) (list of excludable periods of delay).

against Liu in the District of Nevada. The California indictment was dismissed on April 7, 2008.

While Liu was on pretrial release in California, he continued his participation in the conspiracy. Although his pretrial release in California imposed travel restrictions, Liu repeatedly requested permission to travel to Las Vegas. During at least one of these permitted trips, Liu met with a new purchaser, Patrick Schwenke, to rearrange a prior deal regarding counterfeit currency. This meeting was necessitated by the arrests of the coconspirators with whom Schwenke had previously dealt. It is clear that Liu was also traveling to Las Vegas for the purpose of passing counterfeit currency because his net loss at a single casino was over $1.9 million for the period from February 2006 to July 2007, notwithstanding the fact that Liu submitted a financial affidavit upon arrest showing no appreciable wealth. On July 31, 2007, Liu was arrested again, this time in Las Vegas with his wife, Min Li Liu, after being caught attempting to pass counterfeit currency through casino slot machines.

Liu was then indicted in the District of Nevada on August 1, 2007. This indictment charged Liu and his wife with one count of passing, possessing, and concealing counterfeit securities in violation of 18 U.S.C. § 472 and one count of conspiring to pass, possess, and conceal counterfeit securities in violation of 18 U.S.C. § 371. The Las Vegas grand jury returned a first superseding indictment, which dropped the conspiracy charge, on December 12, 2007, and a second superseding indictment ("SSI") was filed in that district on April 2, 2008.

The latest indictment reinstated the conspiracy charge alleged in the initial indictment filed in Nevada, but broadened its scope and time frame to include violations of not only 18 U.S.C. § 472, but also §§ 470 and 473. In essence, the SSI combined the allegations of the California indictment with the allegations of the original indictment filed in Nevada, reflect-

ing the expanded scope of the federal investigation into the international counterfeiting ring after the Las Vegas arrests. The conspiracy described in the SSI ran from April 2004 to July 30, 2007, and the overt acts included the conduct in Nevada that occurred before and while Liu was under the pending California indictment.

Liu filed a motion to dismiss count one of the SSI, the conspiracy charge, in Nevada district court, arguing that it was "merely an extension" of the California indictment and that the failure to timely prosecute him on the California indictment violated his rights under the STA.[3] He asked the district court to dismiss count one with prejudice based on the factors listed in 18 U.S.C. § 3162(a)(2).[4] The district court denied Liu's motion to dismiss after finding that the STA time limits for the California indictment did not apply to the Nevada SSI because the SSI "charge[d] a new and distinct offense from the one charged in the California [indictment]."

The district court in Nevada conducted a jury trial and entered a judgment of acquittal for Min Li Liu at the close of the prosecution's case. Due to the dismissal of Min Li, the district court altered the jury instruction regarding multiple

___

[3]Min Li Liu joined the motion to dismiss. She is not a party to this appeal because the Nevada district court granted her Federal Rule of Criminal Procedure 29 motion for a judgment of acquittal at trial. The codefendants originally charged with Liu in California entered pleas in the California district court, and one died during the pendency of the litigation, leaving Liu as the sole remaining defendant when the Nevada jury returned its verdict on the second superseding indictment.

[4]At the time Liu filed the motion to dismiss, he informed the Nevada district court that, according to the stipulation of the parties, twenty-one days remained on the STA clock for the California indictment at the time the California district court began granting continuances and excluding time under 18 U.S.C. § 3161(h)(7)(A). This calculation is incorrect because it is based on the date Liu was arraigned in California, August 30, 2005, not the date he first appeared in front of the California district court, August 22, 2005. *See id.* § 3161(c)(1). Nonetheless, the seven-day discrepancy does not impact our analysis.

counts and multiple defendants and added jury instructions about translation and mere presence. Thereafter, counsel for both the prosecution and Liu stipulated to the jury instructions, and the district court read the instructions to the jury. The jury convicted Liu on both counts contained in the SSI, and the district court entered judgment against Liu on March 12, 2009. Liu was sentenced to 151-months imprisonment. He now timely appeals his convictions.

## II

Liu's first argument on appeal is that the Nevada district court erred when it denied his motion to dismiss the conspiracy count of the SSI. Liu argues that the conspiracy charged in the SSI was the same conspiracy charged in the California indictment. Therefore, he contends that the timeline imposed by the STA was violated because he was indicted in California in August 2005, but was not brought to trial until September 2008. We review a district court's application of the STA de novo, *United States v. Clymer*, 25 F.3d 824, 827 n.1 (9th Cir. 1994), and its factual findings for clear error, *United States v. Beamon*, 992 F.2d 1009, 1012 (9th Cir. 1993).

## A

**[1]** If a defendant enters a plea of not guilty, the STA mandates that trial must commence within seventy days of either the date on which the indictment was filed or the date on which the defendant first appeared before the court, whichever is later. 18 U.S.C. § 3161(c)(1). To determine whether the STA was violated, we must first determine when the clock began running. *United States v. King*, 483 F.3d 969, 972 (9th Cir. 2007). The district court applied the five factors announced in *Arnold v. United States*, 336 F.2d 347, 350 (9th Cir. 1964), to determine whether the conspiracy charged in the California indictment was the same as the conspiracy charged in the SSI.[5] The district court conducted this analysis

---

[5]The five factors are: "(1) the differences in the periods of time covered by the alleged conspiracies; (2) the places where the conspiracies were

because STA calculations begin from the date of the original indictment if a subsequent indictment "contains charges which, under double-jeopardy principles, are required to be joined with the original charges." *King*, 483 F.3d at 972.

**[2]** An analysis of the *Arnold* factors is unnecessary, however, for purposes of this appeal. We assume, without deciding, that the two indictments charged Liu with the same overarching conspiracy although the SSI supplemented new facts that would fall under each *Arnold* factor. If so, Liu's STA clock began running on the day he first appeared in court under the California indictment—August 22, 2005.

**B**

**[3]** Assuming that Liu was charged with the same conspiracy in the two indictments, we must now determine whether the time that lapsed between Liu's first appearance in court in California and his trial in Nevada violated the STA. In *King*, we held that in certain circumstances the STA clock resets upon the filing of a superseding indictment that adds a new defendant. 483 F.3d at 973. We relied on the Supreme Court's statement that " '[a]ll defendants who are joined for trial generally fall within the speedy trial computation of the latest codefendant.' " *Id.* (quoting *Henderson v. United States*, 476 U.S. 321, 323 n.2 (1986)). We also recognized that not allowing the STA clock to restart upon the addition of a codefendant might result in the STA being used as a vehicle for requiring the government to prosecute codefendants piecemeal. *Id.* (quoting *United States v. Barnes*, 251 F.3d 251, 258 (1st Cir. 2001)).

---

alleged to occur; (3) the persons charged as coconspirators; (4) the overt acts alleged to have been committed; and (5) the statutes alleged to have been violated." *United States v. Stoddard*, 111 F.3d 1450, 1454 (9th Cir. 1997).

**[4]** The addition of a codefendant, however, does not automatically restart the STA clock. Our decision to do so in *King* relied on the "reasonableness of the delay" in adding the codefendant and "the absence of bad faith on the part of the government." *Id.* at 974. These requirements implement the Supreme Court's directive that "defendants who are joined for trial *generally* fall within the speedy trial computation of the latest codefendant." *Henderson*, 476 U.S. at 323 n.2 (emphasis added). If the delay is reasonable and there is no bad faith, the application of defendant-specific STA timelines would frustrate the efficiency rationale that underlies the rules of joinder. *King*, 483 F.3d at 974.

**[5]** If we apply our holding in *King*, Liu's STA clock under the California indictment reset upon the addition of his wife, Min Li, to the SSI. There is no evidence in the record before us to suggest that the delay between the filing of the California indictment and the addition of Min Li through the filing of the SSI was unreasonable. It is evident from the numerous joint requests to continue trial filed with the district court in California that the investigation of this conspiracy, as well as the preparation for trial, was complex. This was a sophisticated worldwide conspiracy to import high quality counterfeit United States currency. Also, Liu continued to conduct the activities of the conspiracy while he was on pretrial release in California. The case kept evolving after the filing of the California indictment because the conspiracy continued its illegal operations. Consequently, any delay in the prosecution of Liu resulting from the ongoing nature of the conspiracy was reasonable.

Additionally, there is no indication in the record that the government knew of Min Li's alleged participation in the conspiracy until July 31, 2007, the day she was arrested in Las Vegas for attempting to pass counterfeit currency through slot machines. The nine-month delay between the day Min Li was arrested and the filing of the SSI in Nevada adding her to the conspiracy first outlined in the California indictment is

reasonable given the multijurisdictional nature, the continuation of new illegal acts in furtherance, and the difficulty of investigating this farflung conspiracy.

**[6]** Because the delay in the filing of the SSI that named another defendant was reasonable, and because there is no evidence of bad faith on the part of the government, Liu's STA clock restarted on April 2, 2008. The district court excluded all of the time between April 2 and September 8, 2008, when the case proceeded to trial, under 18 U.S.C. § 3161(h)(7)(A).[6] Thus, Liu's rights under the STA were not violated. The district court did not err when it denied Liu's motion to dismiss.

## III

Liu alleges that the district court committed reversible error by failing to give a multiple conspiracy jury instruction and a specific unanimity jury instruction. Liu acknowledges that we must apply plain error review to his challenges because he offered no objection to the proposed jury instructions at the time they were given. *See Jones v. United States*, 527 U.S. 373, 389 (1999). Under our plain error standard of review, reversal is warranted when (1) there is error, (2) that is plain, and (3) that affects substantial rights. *Id.* We should correct plain error only if it "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)).

---

[6]Section 3161(h)(7)(A) excludes from the STA calculation "[a]ny period of delay resulting from a continuance granted by any judge . . . if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." Because of the complex nature of the case, Liu does not challenge the district court's exclusion of this time from STA calculation.

## A

**[7]** Liu asserts that he was entitled to a multiple conspiracy instruction because a reasonable juror could have found three separate conspiracies: (1) a conspiracy to sell counterfeit currency to the undercover agent; (2) a conspiracy to sell counterfeit currency to the cooperating witness; and (3) a conspiracy with Min Li to pass counterfeit currency into circulation. A multiple conspiracy jury instruction is appropriate if an indictment "charges several defendants with one overall conspiracy, but the proof at trial indicates that a jury could reasonably conclude that some of the defendants were only involved in separate conspiracies unrelated to the overall conspiracy charged in the indictment." *United States v. Anguiano*, 873 F.2d 1314, 1317 (9th Cir. 1989) (citing *Kotteakos v. United States*, 328 U.S. 750 (1946)). The purposes of this instruction are to minimize any "prejudicial variance" between the indictment and the proof at trial and to protect a defendant from a "spillover of guilt" from one defendant to another. *Id.* at 1317-18. A multiple conspiracy instruction is not required when a defendant "stands trial alone" because "there is no problem of spillover." *Id.* at 1318. The instruction is not meant for "trials of lone defendants who are worried that the jury may not agree upon the same set of facts." *Id.*

**[8]** The district court did not err when it failed to give a multiple conspiracy instruction because there was no potential for spillover guilt in this case. At the time the district court gave the jury its instructions, Liu was the sole defendant. The district court had previously granted Min Li's motion for a directed verdict of acquittal because there was no evidence "showing she had knowledge [of] or involvement" in the conspiracy. Consequently, even though Min Li was a codefendant during the government's presentation of its case, the district court explicitly found that there was no evidence supporting the allegation that Min Li was involved in the conspiracy. The lack of evidence as to Min Li's involvement minimizes any potential for spillover guilt to Liu. It likewise removes the

possibility that Liu was involved in only a minor conspiracy with Min Li that was unrelated to the overarching conspiracy. *See generally id.* at 1317-18.

**[9]** Liu was not entitled to a multiple conspiracy instruction. Thus, the district court did not plainly err in failing to give one.

**B**

Liu also claims that he was entitled to a specific unanimity jury instruction as to which overt act he committed in furtherance of the conspiracy. Ordinarily, a general unanimity instruction is sufficient to protect a defendant's right to a unanimous verdict. *United States v. Echeverry*, 719 F.2d 974, 974 (9th Cir. 1983). A general unanimity instruction is not sufficient if it appears "that there is a genuine possibility of jury confusion or that a conviction may occur as the result of different jurors concluding that the defendant committed different acts." *Id.* at 975.

Here, the district court gave a general unanimity jury instruction; it also directed the jury that it must agree on the "particular crime which the conspirators agreed to commit." The district court did not, however, specifically instruct the jury that it must unanimously agree as to which overt act was committed in furtherance of the conspiracy.[7] Nonetheless,

---

[7]It is not clear that a district court must instruct a jury that it must make a unanimous finding of which overt act was committed in furtherance of the conspiracy. The comments to Ninth Circuit Model Jury Instruction 8.20 state that the instruction should include language requiring unanimity as to the overt act when the applicable statute requires proof of an overt act. The Supreme Court, however, has suggested that a jury need not specifically agree on which overt act was committed. *See Schad v. Arizona*, 501 U.S. 624, 631 (1991) (plurality opinion) ("We have never suggested that in returning general verdicts in such cases the jurors should be required to agree upon a single means of commission, any more than the indictments were required to specify one alone."); *see also United States v. Griggs*, 569 F.3d 341, 343-44 (7th Cir. 2009) (relying on *Schad* to hold that a specific unanimity instruction is not required when a defendant is charged with a violation of 18 U.S.C. § 371). We do not need to definitively resolve that issue in this case, and we decline to do so.

Liu's argument fails because he cannot establish that the omission affected his substantial rights. At the time the jury convicted Liu for his participation in the conspiracy, it also found him guilty of fraudulently passing counterfeit currency, as charged in count two of the SSI. The actions underlying this substantive statutory violation were also alleged as overt acts in furtherance of the conspiracy. Therefore, even if the jury had been explicitly instructed that it must unanimously agree on which overt act occurred, in light of the verdict, there is no reason to find that they would have been unable to do so. Any error in failing to give the specific unanimity instruction as it related to the overt act requirement does not warrant reversal of Liu's conviction.

## IV

The district court did not err when it denied Liu's motion to dismiss the SSI for violation of the STA. It did not plainly err by failing to give a multiple conspiracy or a specific unanimity jury instruction.

**AFFIRMED.**