**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 17-10191 |
| Plaintiff-Appellee, | D.C. No.<br>1:14-cr-00009-FMTG-1 |
| v. | |
| FRANCISCO C. ARIAS, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Guam
Frances Tydingco-Gatewood, District Judge, Presiding

Argued and Submitted June 12, 2019
Honolulu, Hawaii

Before: THOMAS, Chief Judge, and CALLAHAN and CHRISTEN, Circuit
Judges.

Francisco Arias appeals his jury conviction and sentence for conspiracy to

distribute methamphetamine in violation of 21 U.S.C. §§ 841 and 846, conspiracy

to commit promotional money laundering in violation of 18 U.S.C. §

---

[*]       This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

1956(a)(1)(A)(i) and (h), and unlawful use of the mail to facilitate the conspiracy in violation of 18 U.S.C. § 1952.  We affirm in part and reverse in part.

I

Arias challenges the sufficiency of the evidence at trial to convict him of Count Two of the indictment, conspiracy to commit promotional money laundering.  The government has conceded that the evidence was insufficient to sustain the conviction because it failed to prove the money came from drug proceeds rather than payment in advance of a shipment, and therefore, it failed to prove the source of the money involved in the charged activity.  In accordance with the government's concession, we reverse the conviction on Count Two and remand for an entry of judgment of acquittal.

II

Arias contends that his conviction under Count One (conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841, 846) should be reversed because the government proved multiple conspiracies, rather than the single conspiracy charged and, therefore, a unanimity instruction was required.  Arias did not present this issue to the trial court; therefore, we review it for plain error. Fed. R. Crim. P. 52(b); *United States v. Olano*, 507 U.S. 725 (1993).  Arias notes that the government conceded this error in his co-defendant's case, albeit in a slightly

2

different context. *United States v. Concepcion*, No. 15-10525 (9th Cir. 2017) (Dispositive Order).

In this case, the government concedes that it proved multiple conspiracies rather than a single conspiracy and, therefore, a unanimity instruction should have been given. However, it argues that reversal is not warranted because Arias has not satisfied the requirements of the plain error standard. Under the plain error standard, relief is not warranted unless there has been: (1) error, (2) that was plain, (3) that affected substantial rights, and (4) that seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *United States v. Walter-Eze*, 869 F.3d 891, 911 (9th Cir. 2017). Here, the government concedes that the failure to give a unanimity instruction was error, and that it was plain. However, it argues that Arias' substantial rights were not affected because the jury inevitably would have convicted him of the crime.

Our review of this issue is governed by *United States v. Lapier*, 796 F.3d 1090 (9th Cir. 2015). In *Lapier*, we considered an almost identical circumstance where a count for conspiracy to distribute in the indictment alleged a single conspiracy, but the evidence presented at trial showed at least two separate conspiracies. *Id.* at 1092. Thus, there was a "genuine possibility" that jurors were confused about the individual with whom the defendant had conspired. *Id.* at 1096-

3

This possibility was not cured by a specific unanimity jury instruction, which would have required the jury to specify which conspiracy formed the basis of the conviction. The failure to give a specific unanimity instruction violated the defendant's "substantial right to a unanimous verdict." *Id*. Here*,* as in *Lapier*, the government proved multiple conspiracies, creating the genuine possibility of juror confusion. Therefore, the plain error in not giving a specific unanimity instruction affected Aria's substantial right to a unanimous verdict. The government does not argue whether the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *See id*. However, in light of the reversal of a co-defendant's conviction on similar grounds, we conclude that the standard is met, and that the conviction under Count One must be vacated.

III

The government concedes that the trial court erroneously applied a two-level increase pursuant to U.S.S.G. § 2D1.1(b)(15)(A) for Arias' alleged use of "fear, impulse, friendship, affection, or some combination thereof to involve another individual in the illegal purchase, sale, transport, or storage of controlled substances." *Id*. For the two-level increase to apply, the individual must have received "little or no compensation from the illegal purchase." *United States Sentencing Guidelines Manual* § 2D1.1(b)(15)(A). Here, the individual involved

4

received $75,000. Therefore, pursuant to the government's concession, the two-level increase must be vacated.

## IV

The government further concedes that the district court erred by applying a two-point sentencing enhancement for "grouping." Counts Three and Six of the indictment were grouped separately from Counts One and Two, increasing Arias's offense level by two points. Yet all four counts were based on the same quantity of methamphetamine. Thus, all the counts were based on "substantially the same harm" and should "be grouped together." U.S.S.G. §3D1.2. Therefore, the district court erred by applying the two-point sentencing enhancement based on "grouping," and we must vacate the enhancement.

## V

The trial court did not err in applying a four-level increase to the Guidelines calculation for an aggravating role enhancement based on the district court's determination that Arias was "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1. The record supports the district court's conclusion that Arias exercised decision-making authority and organized and supervised the planning of the purchase and sale of the drugs.

## VI

Because resentencing, and perhaps retrial, will be required in this case, we need not reach the question of whether the ultimate sentence imposed was substantively unreasonable.

**AFFIRMED IN PART; REVERSED IN PART; VACATED AND REMANDED FOR FURTHER PROCEEDINGS.**


*United States v. Francisco Arias*, No. 17-10191

CALLAHAN, Circuit Judge, concurring in part and dissenting in part:

I agree with my colleagues that the district court erred by applying the two-point sentencing enhancement based on "grouping" (Part IV of the memorandum disposition) and that the district court did not err in applying the aggravating role enhancement (Part V). I otherwise dissent.

Francisco Arias conspired with Eder Cortez-Zelaya to engage in a large methamphetamine distribution scheme, involving at least ten other co-conspirators. A jury could reasonably infer from these transactions that the money received from co-conspirators was from the sale of drugs and in furtherance of drug distribution. Because the indictment and trial evidence supported a single, overarching conspiracy between Arias and Cortez-Zelaya to distribute methamphetamine, there was no genuine possibility of jury confusion requiring a specific unanimity instruction. I would thus affirm Arias's convictions on Counts One and Two. I would also affirm the sentencing enhancement for use of "fear" under U.S.S.G. § 2D1.1(b)(15)(A).

## I.

In reversing Arias's conviction on Count Two, the majority relies on the government's concession, but the concession misstates the law so we are not bound by it. *See United States v. Ogles*, 440 F.3d 1095, 1099 (9th Cir. 2006) (en banc)

1

(affirming defendant's conviction over the government's concession and warning against falling into the "trap" of being bound by the government's concession as to an erroneous view of the law).

For a conspiracy to promote money laundering, the government was required to prove, inter alia, that Arias "engaged in a financial transaction which involved *proceeds* from specified illegal activity." 18 U.S.C. § 1956(a)(1)(A)(1) (emphasis added). Contrary to the government's concession, the government did not have to prove the source of the money when "a money laundering count is based on transfers among co-conspirators of money from the sale of drugs" because the "'proceeds' includes all 'receipts' from such sales." *United States v. Webster*, 623 F.3d 901, 906 (9th Cir. 2010). Congress expanded the statutory definition of "proceeds" for money laundering charges to mean "any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity." 18 U.S.C. § 1956; *see also* S. REP. NO. 111-10, at 432 (explaining that "limiting the[] scope to only the 'profits' of crimes, rather than the 'proceeds' of the offenses" would lead to the detrimental effect of "criminals escaping culpability simply by claiming their illegal scams did not make any profit"). In rejecting the argument that the receipt of wire transfers could have been a "loan," we held in another drug conspiracy case that the receipt of wire transfers is sufficient to constitute "proceeds" when "all

2

financial dealings between the senders of the money and [the defendant] centered on drug sales." *Webster*, 623 F.3d at 908.

Here, co-conspirators testified at trial to their involvement in the drug distribution scheme that they *received* drugs in the mail from Arias or Cortez-Zelaya; they *sold* the drugs; and they *paid* for the drugs by sending to Arias or Cortez-Zelaya money "for drugs," "for meth," or "to pay for the ice" that Arias sent to them. Furthermore, two co-conspirators testified to the source of the money. In response to a question about who he "g[o]t the $40,000 from," one co-conspirator testified, "From the sales from the drugs." Another co-conspirator similarly testified that he received money from yet another co-conspirator to send to Arias and it was "drug money" from selling drugs she received "[i]n the mail."

All financial dealings between co-conspirators revolved around drug sales, and there is no evidence that Arias's co-conspirators had any alternative source of income or money by which they could independently pay Arias for the drugs. Viewing the evidence in the light most favorable to the prosecution, it is reasonable to infer that co-conspirators were converting the methamphetamine transactions into cash proceeds for Arias in furtherance of the methamphetamine trafficking conspiracy. *See United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir.

2010) (en banc).[1]  Accordingly, I would find that there is sufficient evidence to uphold the jury's conviction on Count Two.

## II.

As to Count One, I disagree with the majority that *United States v. Lapier*, 796 F.3d 1090 (9th Cir. 2015), governs the inquiry.  *Lapier* is factually distinguishable in a pivotal way.  Lapier's indictment for conspiracy to distribute methamphetamine alleged a single conspiracy, but the evidence presented at trial showed two separate conspiracies with unrelated drug suppliers.  *Lapier*, 796 F.3d at 1100–01.  Here, in contrast, a single, overarching conspiracy between Arias and Cortez-Zelaya to distribute methamphetamine to various co-conspiring drug buyers was charged in the indictment, presented at trial, proven by the government, and articulated in the jury instructions.  The collusion between Arias and Cortez-Zelaya in organizing and operating the drug distribution scheme is enough to establish a single conspiracy and to differentiate from Lapier independently conspiring with two different drug suppliers.

Given the clarity of and congruence between the indictment, the trial evidence presented, the government's theory, and the jury instructions, there was no genuine possibility of jury confusion in finding Arias guilty of one overarching

---

[1]    Considering this reasonable inference, it is baffling that the government concedes on appeal that it failed to present adequate evidence to support the charge for Count Two.

conspiracy to distribute methamphetamine. I would affirm Arias's conviction on Count One.

### III.

The majority's reasoning for vacating the "fear" sentencing enhancement ignores that when the individual at issue received $75,000, he was still beholden to Arias's fear tactics. He agreed to sell methamphetamine for Arias in order to pay off his nephew's $12,000 drug debt owed to Arias. However, when the court asked him, "once you pa[id] the [$]12,000, was that the end of it?", he testified, "No." The individual explained that Arias "r[a]ised" his payment obligations and he was still "responsible to pay" because packages were "confiscated" by law enforcement. Based on this testimony, Arias was still "us[ing] fear . . . to involve [the individual] in the illegal . . . sale [and] transport . . . of controlled substances." U.S.S.G. § 2D1.1(b)(15)(A). Accordingly, I would affirm the district's two-level increase under § 2D1.1(b)(15)(A).