**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee*,

v.

ABELARDO NIEBLA-TORRES,
          *Defendant-Appellant.*

No. 15-10261

D.C. No.
4:14-cr-02037-
RCC-DTF-1

OPINION

Appeal from the United States District Court
for the District of Arizona
Raner C. Collins, Chief Judge, Presiding

Argued and Submitted on September 13, 2016
San Francisco, California

Filed January 31, 2017

Before: William A. Fletcher, Morgan B. Christen,
and Michelle T. Friedland, Circuit Judges.

Opinion by Judge Christen

**SUMMARY**[*]

**Criminal Law**

The panel affirmed a conviction for conspiracy to possess with intent to distribute marijuana, in a case in which the defendant argued that the district court erred by denying his motion for a judgment of acquittal because the government did not introduce sufficient evidence to corroborate his confession under the *corpus delicti* doctrine.

The panel held that the government satisfied both prongs of the *corpus delicti* test set forth in *United States v. Lopez-Alvarez*, 970 F.2d 583 (9th Cir. 1992), by introducing sufficient corroborating evidence that the core conduct of the defendant's crime actually occurred, and sufficient evidence to corroborate the reliability of the videotaped confession and the authenticity of the defendant's confessed involvement in the conspiracy.

The panel addressed other issues in a concurrently-filed memorandum disposition.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Roger H. Sigal (argued), Law Offices of Roger H. Sigal, Tucson, Arizona, for Defendant-Appellant.

Lawrence C. Lee (argued) and Bruce M. Ferg, Assistant United States Attorneys; Robert L. Miskell, Appellate Chief; John S. Leonardo, United States Attorney; United States Attorney's Office, Tucson, Arizona; for Plaintiff-Appellee.

## OPINION

CHRISTEN, Circuit Judge:

Abelardo Niebla-Torres (Niebla), a native and citizen of Mexico, appeals his conviction for conspiracy to possess with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D), and 846.[1]  Niebla argues that the district court erred by denying his motion for a judgment of acquittal because the government did not introduce sufficient evidence to corroborate his confession under the *corpus delicti* doctrine.  We have jurisdiction under 28 U.S.C. § 1291, and we affirm Niebla's conviction.

## I.  BACKGROUND

Border Patrol Agent Michael Colella arrested Niebla on Pozo Redondo Mountain in southern Arizona, near the Ajo Border Patrol station, on November 27, 2014.  According to the government's expert trial witness, the Ajo area is a

---

[1] In the defendant's brief to this court, his counsel refers to him as "Niebla," so we adopt that convention here.

smuggling corridor.  Drug-trafficking organizations control the majority, if not all, of the smuggling routes, and the drug traffickers allow individuals to illegally cross into the United States only if they pay a fee, work as backpackers carrying drugs, or serve as scouts to look out for law-enforcement activity.  The backpackers typically carry marijuana and travel in groups of five to ten people.  They traverse the valley floor, instead of walking through the mountains, because each backpack weighs forty to sixty pounds and the backpacks are easier to carry on flat ground.  Scouts track law-enforcement movement from mountaintop locations to help the backpackers avoid detection.

Agent Colella spotted two people on the Pozo Redondo Mountain for several days in a row leading up to Niebla's arrest.  The individuals "weren't standing out in the open like a normal hiker would," and "appeared to be concealing themselves."  Agent Colella could just see the "tops of their heads, just from their chin up, and every so often their heads would go back down and then come back up."  Because the summit provides a relatively unobstructed view of the valley floor (including the Border Patrol station), Agent Colella suspected the two people were scouting law-enforcement activities.  Agent Colella had never encountered any hikers or tourists on the mountain, and described the terrain as very steep, rocky, and slippery.

On the day of Niebla's arrest, Agent Colella learned that other agents had spotted four possible scouts on the mountain from an aircraft equipped with a camera that detects body heat.  Agent Colella and another Border Patrol agent, Paul Gallegos, ascended the mountain by helicopter to investigate.  The helicopter dropped them off near the mountain's summit, where they encountered two individuals later identified as

Niebla and Andres Garcia-Espinoza. The agents apprehended Niebla and Garcia-Espinoza and searched the area where the men were hiding. They found cellular phones and radio batteries in a satchel Niebla was wearing, and hand-held radios, a pair of binoculars, and trash in two nearby caves. Both men were wearing camouflage clothing. Agent Colella arrested Niebla and Garcia-Espinoza on suspicion of smuggling and arranged for transport to the Ajo Border Patrol station. There, another Border Patrol agent, Manuel Alonzo, advised Niebla of his constitutional rights and, two hours later, interviewed him.

During this interview, Niebla admitted that he was on the mountain as a scout. He said that he helped two groups of smugglers carrying suitcases cross the border into the United States, and stated that he did not know what was in the suitcases, but that based on his experience, "it must be marijuana." Niebla specified that each group contained eight or ten people carrying roughly one suitcase per person, and that each suitcase weighed twenty kilograms. He explained that he knew how much the suitcases weighed because the smugglers told him before they crossed into the United States. Niebla said that he was on the mountain for three or four days before Agent Colella arrested him, and that he expected to remain on the mountain for roughly twenty more days. The agents did not recover any marijuana.

The government charged Niebla with conspiracy to possess with intent to distribute a controlled substance (Count One) and illegal reentry (Count Two). He pleaded guilty to the illegal-reentry count and proceeded to a bench trial on the conspiracy count. Niebla filed a pretrial motion to suppress his confession as involuntary, arguing that the agent who interviewed him, Agent Alonzo, threatened him with seven

years' imprisonment if he did not confess. According to Niebla, Agent Alonzo primed him for the interview during the two-hour gap between the time Alonzo read Niebla his rights (an event that was not videotaped) and when the videotaped interview began.

A magistrate judge held a two-day evidentiary hearing on the motion to suppress, at which both Agent Alonzo and Niebla testified. Agent Alonzo testified that he advised Niebla of his constitutional rights and that Niebla willingly waived them and agreed to speak with the agent. The government introduced Niebla's signed rights form into evidence at the hearing. By contrast, Niebla denied any involvement in a drug-smuggling operation and testified that he admitted to helping two groups cross the border because Agent Alonzo "pressured me that if I didn't say that . . . I was going to be there for seven years. That was the reason because he scared me. He pressured me."

The magistrate judge credited Agent Alonzo's description of the interview over Niebla's, largely because the court found Agent Alonzo's account to be more consistent with the videotape. Niebla claimed that Agent Alonzo raised his voice and pressured him into confessing, but Agent Alonzo could not be heard doing so on the videotape. The magistrate judge also found that Niebla's hearing testimony was internally inconsistent. He testified that he was on the mountain for several days without knowing why he was there or who he was with, but also stated on cross-examination that he expected to be paid for the work he performed on the mountaintop, that the work probably involved reporting on the movement of law-enforcement officers, and that he thought the suitcases being smuggled across the border would contain marijuana. Despite Niebla's insistence that he was

not a member of a drug-smuggling operation, the magistrate judge recognized that, in his hearing testimony, Niebla ultimately admitted many of the details from his videotaped confession. The magistrate judge recommended denying the motion to suppress. The district court adopted the recommendation in a pretrial ruling.

At trial, the government presented the testimony of Agents Colella and Alonzo to describe Niebla's arrest and confession; an expert witness to explain how drug-trafficking organizations use scouts in the Ajo corridor; and evidence that Niebla was previously arrested for scouting in the same area in 2011. Niebla made an oral motion for a judgment of acquittal under Federal Rule of Criminal Procedure 29 after the government presented its case. He argued that the government failed to produce sufficient evidence to corroborate his confession to conspiracy to distribute marijuana independent of the confession itself. Specifically, he contended that "the only real evidence presented by the Government of any agreement to distribute a specific controlled substance is Mr. Niebla's post arrest statements." The district court denied the motion, and Niebla chose not to present a defense. The district court found Niebla guilty, and explained its verdict:

> Based upon the evidence, the Court finds that the defendant's guilty on the charge of conspiracy. The Court finds that being on the hillside as he was, in the middle of nowhere, dressed in camouflage clothes with binoculars, radio, batteries, and a satchel is sufficient evidence, and with his cohort, is sufficient evidence to find that there was agreement. The Court finds from his own

words that the object of the agreement was marijuana.**[2]**

The court sentenced Niebla to nine months' imprisonment and three years' supervised release. Niebla timely appealed his conviction. He argues that the conviction must be vacated under the *corpus delicti* doctrine because the government did not present sufficient evidence to corroborate his confession.

## II.  DISCUSSION

### A.  Standard of Review

Under Federal Rule of Criminal Procedure 29, "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." We review de novo the denial of a motion for acquittal. *United States v. Corona-Garcia*, 210 F.3d 973, 978 (9th Cir. 2000). We "ask whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *United States v. Bahena-Cardenas*, 70 F.3d 1071, 1072–73 (9th Cir. 1995)); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

To obtain a conviction on the drug-conspiracy charge, the government was required to prove that: (1) there was an

---

**[2]** Niebla's co-defendant, Andres Garcia-Espinoza, entered a guilty plea to conspiracy to possess with intent to distribute a controlled substance before a magistrate judge on February 17, 2015. The district court accepted the guilty plea on March 4, 2015, the day after Niebla's bench trial concluded.

agreement between two or more people to commit the crime of possessing marijuana with the intent to distribute it; and (2) Niebla joined in the agreement, knowing that it had an unlawful purpose and intending to help accomplish it. *See United States v. Tran*, 568 F.3d 1156, 1164 (9th Cir. 2009); Ninth Circuit Model Criminal Jury Instructions § 9.19. Niebla's videotaped confession was compelling evidence of his guilt, but, under the *corpus delicti* doctrine, the "confession standing alone is not necessarily sufficient to support his conviction." *United States v. Valdez-Novoa*, 780 F.3d 906, 922 (9th Cir. 2015), *cert. denied*, 135 S. Ct. 2913 (2015).

## B.  The *Corpus Delicti* Doctrine

The *corpus delicti* doctrine requires that a conviction must rest on more than a defendant's uncorroborated confession. *See Opper v. United States*, 348 U.S. 84, 92–94 (1954). "Although the government may rely on a defendant's confession to meet its burden of proof, it has nevertheless been long established that, in order to serve as the basis for conviction, the government must also adduce some independent corroborating evidence." *Corona-Garcia*, 210 F.3d at 978 (citing *Opper*, 348 U.S. at 89). The doctrine's purpose is to protect against the risk of convictions based on false confessions alone. *See United States v. Lopez-Alvarez*, 970 F.2d 583, 592 (9th Cir. 1992) (citing *Warszower v. United States*, 312 U.S. 342, 347 (1941)); *see also Opper*, 348 U.S. at 89–90 ("In our country the doubt persists that the zeal of the agencies of prosecution to protect the peace, the self-interest of the accomplice, the maliciousness of an enemy or the aberration or weakness of the accused under the strain of suspicion may tinge or warp the facts of the confession.").

In *Lopez-Alvarez*, we articulated a two-part test to evaluate whether the government has met its burden under the *corpus delicti* doctrine.   970 F.2d at 592.   First, the government "must introduce sufficient evidence to establish that the criminal conduct at the core of the offense has occurred.  Second, it must introduce independent evidence tending to establish the trustworthiness of the admissions, unless the confession is, by virtue of special circumstances, inherently reliable."   *Id.*   The two prongs guard against distinct types of false confessions.  *See id.* at 590–92.  The first ensures that a defendant is not convicted of a non-existent crime—that is, a crime that was not actually committed—and the second reduces the likelihood that a defendant is convicted based upon a false confession to an actual crime.  *See id.*   The government must satisfy both prongs for a case to survive a motion for a judgment of acquittal based on insufficient evidence.  *Id.* at 592.

"[T]he *corpus deliciti* rule does not require the government to introduce evidence that would be independently sufficient to convict the defendant in the absence of the confession."  *Valdez-Novoa*, 780 F.3d at 923. Nor does it require that the government "introduce independent, tangible evidence supporting every element of the *corpus delicti*."  *Lopez-Alvarez*, 970 F.2d at 591.  Instead, the government must introduce corroborating evidence "to support independently only the gravamen of the offense—the existence of the injury that forms the core of the offense and a link to a criminal actor."  *Id.*

Niebla contends that the government failed to meet its burden under both prongs of the *Lopez-Alvarez* test.

## C.  The Core of the Offense

First, Niebla argues that the government did not introduce sufficient corroborating evidence to establish that the criminal conduct at the core of the offense occurred.  The parties dispute what constitutes the gravamen, or core, of the offense of conspiracy to distribute a controlled substance.  In the course of this litigation, the parties have argued for three different definitions of the core of the offense: (1) an agreement to assist smugglers; (2) an agreement to smuggle a controlled substance; and (3) an agreement to smuggle marijuana.

The government has alternated between arguing that the conduct at the core of conspiracy is an agreement to do something illegal, and arguing that, in order to satisfy its *corpus delicti* obligation, it must show that Niebla and his co-conspirator agreed to help smuggle a controlled substance. Niebla has likewise shifted his arguments over time.  In the district court, he maintained that the gravamen of conspiracy under 21 U.S.C. §§ 841 and 846 is an agreement to distribute a specific controlled substance, and that the government failed to meet its burden because it did not present evidence to corroborate the existence of a conspiracy to smuggle marijuana.  On appeal, Niebla argues that the government failed to meet its burden because the evidence was "equally consistent" with the possibility that the agreement was related to human trafficking or to evading law enforcement after illegal reentry into the United States.  We need not decide which definition applies because, even if we define the core of the offense very specifically, as an agreement to possess and distribute marijuana, the government satisfied its *corpus delicti* burden.

### 1. *Conspiracy to Possess With Intent to Distribute Marijuana*

Using the most specific definition of the core of the offense, the government had to present corroborating evidence of a conspiracy to possess with the intent to distribute marijuana. Niebla argues that the government failed to offer sufficient corroborating evidence because the agents did not find any marijuana at the time of Niebla's arrest. In *Opper*, the Supreme Court held that the *corpus delicti* doctrine requires the government to introduce corroborating evidence supporting "the essential facts admitted sufficiently to justify a jury inference of their truth." 348 U.S. at 93. Our court paraphrased *Opper*'s "essential facts" requirement in *Lopez-Alvarez*: "the state is required to support independently only the gravamen of the offense—*the existence of the injury that forms the core of the offense and a link to a criminal actor*—with tangible evidence." 970 F.2d at 591 (emphasis added).

The Supreme Court "has repeatedly said that the essence of a conspiracy is 'an agreement to commit an unlawful act.'" *United States v. Jimenez Recio*, 537 U.S. 270, 274 (2003) (quoting *Iannelli v. United States*, 420 U.S. 770, 777 (1975)). The defendants in *Jimenez Recio* were found guilty of conspiracy to distribute drugs even though the government had seized the drugs before distribution—thereby making the object of the conspiracy impossible—and the defendants joined the conspiracy after the seizure. *Id.* at 272–74. The Court reasoned that impossibility is not a defense to conspiracy because the harm at the center of conspiracy is the agreement. *See id.* at 274 ("That agreement is 'a distinct evil,' which 'may exist and be punished whether or not the

substantive crime ensues.'" (quoting *Salinas v. United States*, 522 U.S. 52, 65 (1997))).

Our court has applied similar reasoning in the context of conspiracies to rob stash houses. The stash-house cases typically involve "reverse sting" operations whereby government agents suggest to targets that they rob a fictional stash house containing illegal drugs and money. "Once the targets have taken steps to rob the fictional house, they are arrested and charged with conspiracy to violate federal narcotics laws." *United States v. Pedrin*, 797 F.3d 792, 794 (9th Cir. 2015). We have affirmed drug-conspiracy convictions arising from these scenarios even though the object of the co-conspirators' illegal agreement—the drugs in the fictional stash house—did not actually exist. *See, e.g.*, *United States v. Williams*, 547 F.3d 1187, 1197 (9th Cir. 2008) (explaining that the non-existent status of the drugs is not a defense to a conspiracy charge).

*Jimenez Recio* and the stash-house cases confirm that the failure to seize marijuana is not fatal to the government's prosecution of Niebla. Indeed, Niebla could have been convicted of participating in a conspiracy to distribute marijuana even if no marijuana had ever existed. Niebla's *corpus delicti* challenge instead turns on whether the government presented sufficient corroborating evidence to demonstrate that he knowingly entered into an agreement to assist marijuana traffickers by scouting.

### 2. Corroborating Evidence of the Offense

"[A] conspiracy may be proven by circumstantial evidence that the defendants acted together with a common goal." *Williams*, 547 F.3d at 1196 (quoting *United States v.*

*Iriarte-Ortega*, 113 F.3d 1022, 1024 (9th Cir. 1997), *amended by United States v. Iriarte-Ortega*, 127 F.3d 1200 (9th Cir. 1997)); *see also Sandez v. United States*, 239 F.2d 239, 244 (9th Cir. 1956) ("The corpus delicti may be proved by circumstantial evidence."). Here, the government introduced independent, circumstantial evidence that Niebla knowingly entered into an unlawful agreement to smuggle marijuana. Agent Colella arrested Niebla in close proximity to his co-defendant, Andres Garcia-Espinoza, on a remote mountaintop in an area known to be frequented by marijuana smugglers and their mountaintop scouts. Niebla was dressed in camouflage, and Agent Colella testified that he saw two people hiding together on the mountain for several days before the arrest. When they were apprehended, Niebla and Garcia-Espinoza had hand-held radios, cellular telephones, and binoculars.[3] According to the government's expert witness, Border Patrol Agent Carlos Rochin, scouts use these items "to observe law enforcement movement and then relay it back to the guide," so the guide can avoid apprehension while smuggling drugs across the desert. The remote geographic area, the communications equipment, and the expert witness's testimony are circumstantial evidence of the agreement that was at the heart of this drug-distribution conspiracy. *See United States v. Vargas-Ocampo*, 747 F.3d 299, 302–03 (5th Cir. 2014) (en banc) (holding that presence of scouts and defendant's use of a push-to-talk radio

---

[3] Niebla argued that the district court erred by admitting the binoculars (Exhibit 55) and a photo of the binoculars and two-way radios (Exhibit 14) at trial because the government authenticated both exhibits with hearsay testimony. We held that it was not plain error for the district court to admit these exhibits in a memorandum disposition filed concurrently with this opinion.

constituted circumstantial evidence of an agreement to engage in drug trafficking).

Agent Rochin also explained that drug-trafficking organizations control the majority, if not all, of the smuggling routes in the Ajo Border Patrol station's area of operations, and that they typically traffic marijuana. Although aliens are also smuggled along these routes, Agent Rochin testified that one would need prior permission from the drug-trafficking organizations in order to cross into the United States on these routes, and that an individual must pay a fee, work as a scout, or carry drugs across the desert in order to gain the drug-trafficking organizations' permission to cross.

The government also presented evidence of Niebla's 2011 arrest to counter Niebla's argument that he was on the mountain for several days with no knowledge of why he was there.[4] Border Patrol Agent Vincente Paco testified that he arrested Niebla for scouting in 2011 close to the location where Agent Colella arrested Niebla for the current offense. Niebla was not charged in 2011. Although Agent Paco's team was conducting an investigation into alien smuggling when they encountered Niebla, Agent Paco testified that he did not know whether Niebla was scouting for a human-trafficking or drug-trafficking operation, but that the area where his team found Niebla is mostly used for narcotic smuggling.

---

[4] Niebla argued the district court erred by admitting evidence of the prior arrest under Federal Rule of Evidence 404(b). We held that the district court properly admitted this evidence in a memorandum disposition filed concurrently with this opinion.

We conclude that the government satisfied the first prong of the *Lopez-Alvarez corpus delicti* test by introducing sufficient corroborating evidence that the core conduct of Niebla's crime actually occurred. To satisfy the *corpus delicti* doctrine, "the corroborative evidence does not have to prove the offense beyond a reasonable doubt, or even by a preponderance, as long as there is substantial independent evidence that the offense has been committed . . . ." *Smith v. United States*, 348 U.S. 147, 156 (1954). The government established that: (1) agents arrested Niebla in an area controlled by drug-trafficking organizations; (2) those organizations typically traffic marijuana; (3) Agent Colella saw two men on the mountain trying to hide for several days leading up to the arrest; (4) Niebla was wearing camouflage clothing and carrying a cellular phone and radio batteries at the time of the arrest; (5) the arresting agents found binoculars and hand-held radios in nearby caves; (6) scouts use these same items to help backpackers traverse the valley floor carrying marijuana; and (7) Niebla was arrested on suspicion of scouting for a smuggling operation in the same area three years earlier.

## D. Reliability of the Confession

Niebla also argues that the government's evidence was insufficient to corroborate his confession under *Lopez-Alvarez*'s second prong. This part of the *corpus delicti* test requires that the government "introduce independent evidence tending to establish the trustworthiness of the admissions, unless the confession is, by virtue of special circumstances, inherently reliable." *Lopez-Alvarez*, 970 F.2d at 592. In *Valdez-Novoa*, we held that the fact that a confession "is recorded, voluntary, and the result of an interrogation that is conducted in a manner consistent with the constitutional

protections afforded the accused supports a determination that it is 'inherently reliable' under *Lopez-Alvarez*'s second prong." 780 F.3d at 925.

Niebla emphasizes the two-hour delay between the time he received the *Miranda*-advisement and the time his interview was videotaped, and maintains that his demeanor during the interview is consistent with pre-interview coaching. Niebla does not challenge whether his "statement was voluntary and *Miranda*-compliant, but rather, whether there was evidence which shed doubt on the confession's reliability."

Niebla's argument that his confession was coached is not supported by the videotape. In fact, the district court's finding that the videotape demonstrates Niebla's confession was "spontaneous and unrehearsed" is well supported. Contrary to Niebla's claim, Agent Alonzo did not raise his voice or speak harshly during Niebla's interview. Niebla is soft-spoken and has slumped, downcast posture in the video, but he does not appear frightened of Agent Alonzo or intimidated into answering questions. *Cf. United States v. Preston*, 751 F.3d 1008, 1012 (9th Cir. 2014) (en banc). Contrary to his assertion that he was coached, the videotape shows that Niebla corrected Agent Alonzo several times during the interview, and sometimes responded negatively to Alonzo's leading questions. The record demonstrates that Agent Alonzo did not insist on particular answers to his questions or repeatedly badger Niebla until he received satisfactory responses. *See Preston*, 751 F.3d at 1013.

Niebla failed to show that his interrogation was inconsistent "with the constitutional protections afforded the accused." *See Valdez-Novoa*, 780 F.3d at 925. The recording

allowed the court to see how the interview unfolded and to assess the voluntariness of Niebla's responses. "Where the government complies with all of the procedural protections afforded the accused and the defendant's videotaped statement is shown to the [trier of fact], there is no elevated risk that the confession was the product of coercion or that the defendant's words were misconstrued." *Id.*

Furthermore, the same physical and circumstantial evidence that corroborates Niebla's confession to the core of the offense also verifies the authenticity of his confessed involvement in the conspiracy. *See id.* at 924–25. Niebla stated that he was on the mountain for several days before the arrest, which is consistent with Agent Colella's observation of two people hiding together on the mountain for that period of time. Niebla explained that he helped two groups of eight or ten people cross the border into the United States, and that each suitcase weighed twenty kilograms. Testimony from the government's expert witness was in accord. The expert testified that smugglers typically traverse the valley floor in groups of five to ten people carrying backpacks that weigh between forty and sixty pounds each, which is consistent with Niebla's twenty-kilogram estimate. The agents found hand-held radios, radio batteries, cell phones, and binoculars on the mountain, and in his videotaped confession Niebla admitted that he and his co-conspirator used these items to communicate with and guide smugglers across the desert undetected. The government's expert also testified that scouts for marijuana-trafficking organizations in the Ajo corridor use these devices. We conclude that the government introduced sufficient corroborating evidence to satisfy *Lopez-Alvarez*'s second prong.

For the foregoing reasons, Niebla's confession was adequately corroborated under the *corpus delicti* doctrine. Because the confession is sufficiently corroborated, viewing all the evidence (including the confession) in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that Niebla knowingly entered into an unlawful agreement to serve as a scout for marijuana traffickers. *See Corona-Garcia*, 210 F.3d at 978.

## III.  CONCLUSION

Niebla failed to meet his burden of showing that the government did not introduce sufficient independent evidence to corroborate his confession. Because the evidence adduced at trial satisfied the *corpus delicti* doctrine, the district court correctly denied Niebla's motion for a judgment of acquittal under Federal Rule of Criminal Procedure 29.

**AFFIRMED.**