**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

PRAGEDIO ESPINOZA-VALDEZ,
*Defendant-Appellant.*

No. 16-10395

D.C. No.
2:15-cr-01465-JJT-1

OPINION

Appeal from the United States District Court
for the District of Arizona
John Joseph Tuchi, District Judge, Presiding

Argued and Submitted November 17, 2017
San Francisco, California

Filed May 7, 2018

Before: Johnnie B. Rawlinson and Jay S. Bybee, Circuit
Judges, and Paul L. Friedman,* District Judge.

Opinion by Judge Friedman;
Dissent by Judge Rawlinson

---

*The Honorable Paul L. Friedman, United States District Judge for the District of Columbia, sitting by designation.

**SUMMARY**[**]

**Criminal Law**

The panel reversed convictions for conspiracy to import and conspiracy to distribute marijuana.

The panel held that there was insufficient evidence for a jury to find beyond a reasonable doubt that the defendant entered into a conspiratorial agreement to import or distribute marijuana, where (1) the government's case rested almost exclusively on expert testimony regarding drug traffickers' use of scouts to facilitate the transportation of marijuana through the area in which Border Patrol agents observed the defendant and two unknown men; and (2) the government presented no evidence of (a) drugs that actually passed through or were intended to pass through that area under the defendant's watch, or (b) any specific individuals with whom the defendant allegedly conspired. The panel emphasized that the government may not rely on expert testimony of drug courier profiles alone to establish guilt.

Dissenting, Judge Rawlinson wrote that it cannot fairly be said that *no* reasonable juror could have found the essential elements of conspiracy to import and distribute marijuana beyond a reasonable doubt.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Atmore Baggot (argued), Apache Junction, Arizona, for Defendant-Appellant.

Brooke T. Afshari (argued), Assistant United States Attorney; Krissa M. Lanham, Deputy Appellate Chief; Elizabeth A. Strange, First Assistant United States Attorney; United States Attorney's Office, Phoenix, Arizona; for Plaintiff-Appellee.

**OPINION**

FRIEDMAN, District Judge:

Pragedio Espinoza-Valdez appeals his convictions for conspiracy to import and conspiracy to distribute marijuana. He argues that the evidence presented at trial was insufficient to support either conviction and that the district court therefore erred in denying his motion for acquittal notwithstanding the verdict. We agree and reverse the two conspiracy convictions.[1]

## I. STANDARD OF REVIEW AND LEGAL AUTHORITY

We review de novo whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Nevils*, 598 F.3d 1158, 1163–64 (9th Cir. 2010) (en banc); *accord*

---

[1] Because we find it necessary to reverse on this ground, we need not reach Espinoza-Valdez's other arguments.

*United States v. Grovo*, 826 F.3d 1207, 1213–14 (9th Cir. 2016); *United States v. Egge*, 223 F.3d 1128, 1131 (9th Cir. 2000). Even on this deferential standard, we conclude that the government presented insufficient evidence that Espinoza-Valdez entered into a conspiratorial agreement to distribute or import marijuana. The district court therefore erred in denying Espinoza-Valdez's motion for judgment of acquittal.

The elements of conspiracy are "(1) an agreement to accomplish an illegal objective, and (2) the intent to commit the underlying offense." *United States v. Moe*, 781 F.3d 1120, 1124 (9th Cir. 2015); *see also United States v. Loveland*, 825 F.3d 555, 559 (9th Cir. 2016); *United States v. Herrera-Gonzalez*, 263 F.3d 1092, 1095 (9th Cir. 2001); *United States v. Lennick*, 18 F.3d 814, 818 (9th Cir. 1994). To be convicted of conspiracy, the defendant must have joined the agreement knowing its purpose and intending to help accomplish that purpose. *See United States v. Mincoff*, 574 F.3d 1186, 1192 (9th Cir. 2009). The conspiratorial agreement may be proved by direct or circumstantial evidence. *See Loveland*, 825 F.3d at 561–62; *Mincoff*, 574 F.3d at 1192. It is not necessary that the conspirators made a formal or express agreement or that they agreed on every detail of the conspiracy. *See Mincoff*, 574 F.3d at 1194–95; *United States v. Melvin*, 91 F.3d 1218, 1224 (9th Cir. 1996). Rather, the agreement may be inferred from the defendants' acts pursuant to the scheme and other circumstantial evidence. *See Grovo*, 826 F.3d at 1216; *United States v. Lapier*, 796 F.3d 1090, 1095 (9th Cir. 2015); *Mincoff*, 574 F.3d at 1192. The government has the burden of proving beyond a reasonable doubt the creation and existence of the conspiratorial agreement, as well as the defendant's entry into that agreement. *See Loveland*, 825 F.3d at 557, 561; *Moe*, 781 F.3d at 1124; *Lennick*,

18 F.3d at 818, 820.  Furthermore, "[t]he government has the obligation to establish not only the opportunity but also the actual meeting of minds.  Mere association and activity with a conspirator does not meet the test."  *Lapier*, 796 F.3d at 1095; *see also Lennick*, 18 F.3d at 818 ("[S]imple knowledge, approval of, or acquiescence in the object or purpose of a conspiracy, without an intention and agreement to accomplish a specific illegal objective, is not sufficient.").

## II.  FACTUAL BACKGROUND

In this case, the government presented evidence at trial that U.S. Border Patrol agents had observed three men on a mountaintop in the Vaiva Hills area of Arizona.  Two of them were communicating with one another.  The third man, Espinoza-Valdez, was initially observed some distance away sitting under a tree.  Later, he was observed walking behind one of the other men and carrying a backpack.  Upon seeing the agents, Espinoza-Valdez dropped the Motorola radio he was carrying and ran.  The agents apprehended him and found a Motorola battery clip, radio batteries, toilet paper, wet wipes, and food in his backpack, to which carpet shoes were attached.  One of the agents testified that carpet shoes are used by both drug couriers and undocumented immigrants to avoid leaving footprints while passing through the area.  The agents also located a nearby campsite with sleeping bags, water jugs, and additional food supplies.  They did not find any drugs in the area.[2]

---

[2] Fact witnesses also testified as to their opinions that a footprint observed at a nearby scout encampment matched the sneaker print of the shoes Espinoza-Valdez was wearing at the time of his arrest.  The basis for their lay opinion testimony is not clear to this court.

In addition, U.S. Border Patrol Commander Bobby Garcia testified as an expert on drug trafficking organizations as follows: Drug trafficking organizations smuggle marijuana into the United States using groups of five to ten men who hike across the desert carrying marijuana in backpacks. These backpackers are led by guides who communicate by cell phone or radio with scouts who camp along the route and monitor law enforcement movements. Drug smugglers often use Motorola brand radios with sophisticated encryption capabilities and carry carpet shoes to disguise their footprints. The month of October — when Espinoza-Valdez was apprehended — is part of the fall "drug-smuggling season," and the Vaiva Hills area is a known drug-smuggling corridor. Drug traffickers control the area and would not allow others to move through it, and the circumstances surrounding Espinoza-Valdez's apprehension were consistent with him being a drug trafficking scout.

The government also presented evidence that, approximately four months prior to the events giving rise to the instant case, U.S. Border Patrol agents had apprehended Espinoza-Valdez in the same Vaiva Hills area. At that time, Espinoza-Valdez told the agents that he and others had entered the United States and were backpacking marijuana across the desert. The agents did not locate any backpacks of marijuana. Espinoza-Valdez was released and not charged with any criminal offense. This evidence was admitted at trial under Federal Rule of Evidence 404(b), and the court gave a limiting instruction.

## III.  DISCUSSION

Despite the evidence of Espinoza-Valdez's presence with two unknown men in a known drug-smuggling corridor close to the Mexican border near what appeared to be a camp

for drug trafficking scouts, as well as the seizure of items that were suspicious in this context, there was insufficient evidence for a jury to find beyond a reasonable doubt that Espinoza-Valdez entered into a conspiratorial agreement to import or distribute marijuana.  The government's case rested almost exclusively on the expert testimony regarding drug traffickers' use of scouts to facilitate the transportation of marijuana through the Vaiva Hills area.  The government presented no evidence of drugs that actually passed through or were intended to pass through that area under Espinoza-Valdez's watch.  Nor did the government present evidence of any specific individuals with whom Espinoza-Valdez allegedly conspired.  There simply is no evidence as to what (if anything) was specifically agreed to, who agreed to it, or what any agreement was intended to accomplish.[3]  Given the dearth of evidence of an agreement to import or distribute marijuana between Espinoza-Valdez and the two unknown men observed on the mountain — or anyone else — the government has not met its burden of proving his participation in a conspiracy beyond a reasonable doubt.  *See*

---

[3] The government argues in its brief that acting as a lookout or scout by itself proves an agreement to conspire.  But the published opinions on which it primarily relies only further underscore the lack of evidence of a conspiratorial agreement in this case.  For example, in *United States v. Mares*, law enforcement officers observed Mares and his co-defendant speaking "at some length" with a drug courier just minutes before a drug transaction took place.  940 F.2d 455, 458–59 (9th Cir. 1991).  And in *United States v. Perez*, law enforcement agents observed Perez watching a drug transaction from his automobile, arrested him, and discovered 1.5 grams of cocaine concealed in a hatband in the back of his car. 491 F.2d 167, 170–71 (9th Cir. 1974).

*Loveland*, 825 F.3d at 557; *Lapier*, 796 F.3d at 1095; *United States v. Penagos*, 823 F.2d 346, 347–50 (9th Cir. 1987).[4]

Furthermore, we have long held that drug courier profile evidence such as that admitted here is admissible only for limited purposes. *See United States v. Webb*, 115 F.3d 711, 715 (9th Cir. 1997), *abrogated on other grounds by United States v. Hankey*, 203 F.3d 1160, 1169 n.7 (9th Cir. 2000).[5] Drug courier profile testimony is inherently prejudicial because of the potential it has for including innocent citizens as profiled drug couriers and because simply matching a

---

[4] The dissent relies on this court's recent decision in *United States v. Niebla-Torres*, 847 F.3d 1049 (9th Cir. 2017). While we agree that *Niebla-Torres* involved strikingly similar facts to those present in the instant case, *see id.* at 1052–53, the primary issue in that case was whether to admit Niebla-Torres' confession that he had been acting as a scout over his contention that the confession had been involuntary, *see id.* at 1053. While this court reviewed the denial of Niebla-Torres' motion for judgment of acquittal de novo, *see id.* at 1054, it first reviewed the sufficiency of the evidence offered to corroborate his confession by applying a burden far less than beyond a reasonable doubt. Under the *corpus delicti* doctrine, the court in *Niebla-Torres* looked only to determine whether there was "substantial independent evidence that the offense ha[d] been committed" before admitting the confession. *See id.* at 1057 (citation omitted). Once the court found, under this minimal standard, that admission of the confession was appropriate, it easily concluded that, "viewing all the evidence (including the confession) in the light most favorable to the prosecution, any rational trier of fact could have found [guilt] beyond a reasonable doubt . . . ." *See id.* at 1059. In this case, Espinoza-Valdez never confessed to the crime with which he was charged. As a result, *Niebla-Torres* has only limited application.

[5] In *Webb*, we explained that such testimony is admissible "only in two circumstances": (1) "to establish modus operandi, but only in exceptional, complex cases," or (2) "to rebut specific attempts by the defense to suggest innocence based on the particular characteristics described in the profile." *Id.* at 715.

defendant to a drug profile may unfairly suggest to the jury that otherwise innocuous conduct or events demonstrate criminal activity. *See United States v. Cordoba*, 104 F.3d 225, 229–30 (9th Cir. 1997); *United States v. Lim*, 984 F.2d 331, 334–35 (9th Cir. 1993); *United States v. Beltran-Rios*, 878 F.2d 1208, 1210 (9th Cir. 1989); *see also United States v. White*, 890 F.2d 1012, 1014 (8th Cir. 1989); *United States v. Hernandez-Cuartas*, 717 F.2d 552, 555 (11th Cir. 1983).[6] A drug expert's testimony cannot substitute for witnesses who actually observed or participated in the illegal activity. Nor can it be permitted to so submerge the factual evidence that its unfair prejudicial effect substantially outweighs any probative value it might have. *See Rogers v. Raymark Indus., Inc.*, 922 F.2d 1426, 1430–31 (9th Cir. 1991); *White*, 890 F.2d at 1013–14; *Hernandez-Cuartas*, 717 F.2d at 555. The government may not rely on expert testimony of drug courier profiles alone to establish guilt. Yet here, Garcia's broad expert testimony — describing the structure of drug trafficking organizations and the drug scout profile and linking Espinoza-Valdez to that profile — was the crux of the government's case.

While it is possible, perhaps even probable, that Espinoza-Valdez was on the mountaintop to act as a scout for drug traffickers, a reasonable suspicion or probability of guilt is not enough. Guilt, according to the basic principles of our jurisprudence, must be established beyond a

---

[6] The Supreme Court has defined "drug courier profile" evidence as a "somewhat informal compilation of characteristics believed to be typical of persons unlawfully carrying narcotics." *See Reid v. Georgia*, 448 U.S. 438, 440 (1980); *see also United States v. Murillo*, 255 F.3d 1169, 1176 (9th Cir. 2001). Such profiles are "commonly used by agents as a basis for reasonable suspicion to stop and question a subject." *Cordoba*, 104 F.3d at 229; *accord United States v. Lui*, 941 F.2d 844, 847 (9th Cir. 1991).

reasonable doubt.  Here, it was not:  Viewing the entirety of the evidence in the light most favorable to the government, there was insufficient evidence upon which a reasonable mind might fairly find the existence of a conspiracy to import or distribute marijuana — or of Espinoza-Valdez's agreement to join such a conspiracy — beyond a reasonable doubt.  *See Grovo*, 826 F.3d at 1213–14; *Nevils*, 598 F.3d at 1163–64; *Egge*, 223 F.3d at 1131.

The district court's judgment with respect to the convictions for conspiracy to import and conspiracy to distribute marijuana is **REVERSED.**

---

RAWLINSON, Circuit Judge, dissenting:

I respectfully dissent from the conclusion of my colleagues that insufficient evidence supported the conviction of defendant Pragedio Espinoza-Valdez for conspiracy to import and distribute marijuana.

We start with a standard of review that presents a significant obstacle for Espinoza-Valdez to overcome.  First, we review the evidence "in the light most favorable to the prosecution," with all inferences drawn in favor of the prosecution's case.  *United States v. Nevils*, 598 F.3d 1158, 1163–64 (9th Cir. 2010) (en banc).  Then, only after viewing the "evidence in the light most favorable to the prosecution," and drawing all inferences in favor of the prosecution's case, we ask whether "*any* rational trier of fact [could find] the essential elements of the crime beyond a reasonable doubt." *Id*. at 1164 (citation omitted) (emphasis in the original).  So the majority has concluded that even after viewing the evidence in the light most favorable to the prosecution's case, and even after drawing all inferences in favor of the

prosecution's case, *no* reasonable juror could have found the essential elements of conspiracy to import and distribute marijuana beyond a reasonable doubt. I beg to differ. I do not agree that Espinoza-Valdez has overcome this formidable standard of review.

The government may prove a drug conspiracy through "circumstantial evidence that defendants acted together in pursuit of a common illegal goal." *United States v. Mincoff*, 574 F.3d 1186, 1192 (9th Cir. 2009) (citation omitted). "Express agreement is not required; rather agreement may be inferred from conduct." *Id*. (citation omitted).

Here is the evidence presented by the prosecution:

- Defendant was apprehended adjacent to a "scout encampment" in an area known for marijuana smuggling.

- Expert testimony that scouts serve as lookouts for drug trafficking organizations in the area.

- Expert testimony that scouts typically communicate with marijuana smuggling groups via Motorola radios.

- Expert testimony that, in order to avoid detection, scouts wear "carpet shoes" to eliminate "foot signs."

- Expert testimony that scouts typically are trusted individuals who previously worked for the drug trafficking organizations.

In addition to the expert, the following testimony was adduced regarding the events preceding defendant's arrest:

- Defendant was observed near a scout encampment at the top of a mountain range in a known marijuana smuggling corridor.

- When agents attempted to apprehend the defendant, he fled.

- As the defendant fled, he dropped a Motorola radio.

- In the defendant's backpack were batteries and accessories for a Motorola brand radio, and hanging from the backpack was a carpet shoe.

- The agents discovered a scout encampment nearby and found the defendant's foot sign, a car battery charging a Motorola radio battery, and provisions.

- The defendant was apprehended months earlier in the same location. At that time, Defendants admitted "backpacking marijuana."

A reasonable inference from the combined evidence is that the defendant agreed with one or more members of the drug trafficking organization to serve as a lookout to enable marijuana smugglers to safely deliver their loads. Considered in the light most favorable to the prosecution, that evidence is sufficient to support a conspiracy conviction, as the specific identity of co-conspirators is not required. *United States v. Sangmeister*, 685 F.2d 1124, 1127 (9th Cir 1982) (["A]n accused may be found guilty of a conspiracy if there is sufficient evidence of an unnamed unindicted co-conspirator. . . .") (citations omitted).

We recently affirmed a conspiracy conviction based on comparable evidence in *United States v. Niebla-Torres*,

847 F.3d 1049, 1056–58 (9th Cir. 2017).   We listed the following as sufficient evidence of the crime:

> (1) agents arrested [the defendant] in an area controlled by drug trafficking organizations [same for our case]; (2) those organizations typically traffic marijuana [same for our case]; (3) [an agent] saw two men on the mountain trying to hide for several days leading up to the arrest [agents in our case observed subjects the day before the arrest]; (4) [the defendant] was wearing camouflage clothing and carrying a cellular phone and radio batteries at the time of arrest [the defendant in our case had a handheld radio and radio batteries and was wearing black clothes with a camouflage hat]; (5) the arresting agents found binoculars and hand-held radios in nearby caves [agents in our case discovered a scout encampment nearby with defendant's foot sign and a car battery charging a radio battery]; (6) scouts use these same items to help backpackers traverse the valley floor carrying marijuana [same for our case]; (7) [the defendant] was arrested on suspicion of scouting for a smuggling operation in the same area three years earlier [in our case, the defendant was apprehended *months* earlier in the same location and *admitted* "backpacking marijuana"].

*Id*. at 1057–58.

The majority attempts to distinguish this binding authority on the basis that the defendant in *Niebla-Torres*

confessed. *See Majority Opinion*, p. 2, n. 4. However, that is not a meaningful distinction in view of the nearly identical facts in *Niebla-Torres*, particularly considering our obligation to construe the facts in the light most favorable to the government. *See Nevils*, 598 F.3d at 1163–64. It simply cannot be fairly said that *no* reasonable juror could have convicted Espinoza-Valdez on these facts. *See Id*. at 1164. Because the majority disposition fails to faithfully adhere to the governing standard of review and breaks with binding precedent, I respectfully dissent.